**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

LOUIS MANDARINI III, as he is EXECUTIVE DIRECTOR, MASSACHUSETTS LABORERS' HEALTH AND WELFARE FUND, MASSACHUSETTS LABORERS' PENSION FUND and MASSACHUSETTS LABORERS' ANNUITY FUND; JAMES V. MERLONI, JR., as he is ADMINISTRATOR, NEW ENGLAND LABORERS' TRAINING TRUST FUND; and JOSEPH BONFIGLIO, as he is TRUSTEE, MASSACHUSETTS LABORERS' LEGAL SERVICES FUND,
Plaintiffs,

vs.

HIGHWAY SAFETY SOLUTIONS, INC. and HI-WAY SAFETY SYSTEMS, INC.,
Defendants.

C.A. No.

**VERIFIED COMPLAINT**

**NATURE OF ACTION**

1. This is an action brought pursuant to §§502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132(a)(3) and (d)(1) and 1145 and §301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. §185, by employee benefit plans to enforce the obligations to make contributions and pay interest due to the plans under the terms of a collective bargaining agreement and the plans.

**JURISDICTION**

2. The Court has exclusive jurisdiction of this action pursuant to §502(a), (e) and (f) of ERISA, 29 U.S.C. §§1132(a), (e) and (f), and concurrent jurisdiction pursuant to §301 of the

LMRA, as amended, 29 U.S.C. §185, without respect to the amount in controversy or the citizenship of the parties.

**PARTIES**

3. Plaintiff Louis A. Mandarini, III is the Executive Director of the Massachusetts Laborers' Health and Welfare Fund. The Massachusetts Laborers' Health and Welfare Fund is an "employee welfare benefit plan" within the meaning of §3(3) of ERISA, 29 U.S.C. §1002(3). It provides health, dental and prescription benefits and life insurance, accident insurance, and accident and sickness benefits to participants. The Fund is administered at 1400 District Avenue, Burlington, Massachusetts, within this judicial district.

4. Plaintiff Louis A. Mandarini, III is also the Executive Director of the Massachusetts Laborers' Pension Fund. The Massachusetts Laborers' Pension Fund is an "employee pension benefit plan" within the meaning of §3(2)(A) of ERISA, 29 U.S.C. §1002(2)(A). It provides participants with a defined pension benefit. The Fund is administered at 1400 District Avenue, Burlington, Massachusetts, within this judicial district.

5. Plaintiff Louis A. Mandarini, III is also the Executive Director of the Massachusetts Laborers' Annuity Fund. The Massachusetts Laborers' Annuity Fund is an "employee pension benefit plan" within the meaning of §3(2)(A) of ERISA, 29 U.S.C. §1002(2)(A). This Fund is a defined contribution fund. The Fund is administered at 1400 District Avenue, Burlington, Massachusetts, within this judicial district.

6. Plaintiff James V. Merloni, Jr. is the Administrator of the New England Laborers' Training Trust Fund. The New England Laborers' Training Trust Fund is an "employee welfare benefit plan" within the meaning of §3(1) of ERISA, 29 U.S.C. §1002(1). This Fund trains

apprentices and journey workers in the construction industry. The Fund is administered at 37 East Street, Hopkinton, Massachusetts, within this judicial district.

7. Plaintiff Joseph Bonfiglio is a Trustee of the Massachusetts Laborers' Legal Services Fund. The Massachusetts Laborers' Legal Services Fund is an "employee welfare benefit plan" within the meaning of §3(1) of ERISA, 29 U.S.C. §1002(1). The Fund is administered at 1400 District Avenue, Burlington, Massachusetts, within this judicial district.

8. The Health and Welfare, Pension, Annuity, Training and Legal Services Funds are multi-employer plans within the meaning of §3(37) of ERISA, 29 U.S.C. §1002(37). They are hereinafter collectively referred to as "the Funds." The Funds are third party beneficiaries of the collective bargaining agreement between Defendant Highway Safety Solutions, Inc. and the Massachusetts Laborers' District Council ("Union").

9. Defendant Highway Safety Solutions, Inc. ("Highway") is a Massachusetts corporation with a principal place of business at 9 Rockview Way, Rockland, Massachusetts, and is an employer engaged in commerce within the meaning of §3(5) and (12) of ERISA, 29 U.S.C. §1002(5) and (12) and within the meaning of §301 of the LMRA, 29 U.S.C. §185. Its President, Treasurer, and Secretary is Kathy Coggeshall Delong. It was incorporated on March 25, 1998.

10. Defendant Hi-Way Safety Systems, Inc. ("Hi-Way") is a Massaschusetts corporation with a principal place of business at 9 Rockview Way, Rockland, Massachusetts, and is an employer engaged in commerce within the meaning of §3(5) and (12) of ERISA, 29 U.S.C. §1002(5) and (12) and within the meaning of §301 of the LMRA, 29 U.S.C. §185. Its President, Treasurer, and Secretary is Kathy Coggeshall Delong. It was incorporated on March 4, 1992.

**GENERAL ALLEGATIONS OF FACT**

11. On or about June 20, 2003, Highway signed a Memorandum of Agreement ("MOA"), agreeing to be bound to the terms of collective bargaining agreements requiring contributions to Plaintiff Funds. A true and accurate copy of Highway's signed Memorandum of Agreement is attached hereto as Exhibit A.

12. Because of the MOA, Highway became party to the Heavy and Highway Agreement between the Labor Relations Division of the Construction Industries of Massachusetts and the Massachusetts Laborers' District Council (the "CBA"). The most recent version of the CBA, which is effective from June 2017 through May 2022, has not yet been printed. However, the relevant terms of the 2012 - 2017 CBA are the same as those of the 2017 - 2022 CBA. A copy of the 2012 - 2017 CBA is attached hereto as Exhibit B.

13. The CBA requires employers to make contributions to each of the Plaintiff Funds for each hour worked by covered employees at rates prescribed therein. Id. at pp. 23-28.

14. The CBA also requires employers to remit contributions to the New England Laborers' Labor-Management Cooperation Trust, the New England Laborers' Health and Safety Fund, the Massachusetts Laborers' Unified Trust, and the Construction Industries of Mass. Advancement Fund ("the non-ERISA Funds") for each hour worked by covered employees at prescribed rates. Id. at 28-30, 36. Further, it specifies that dues and contributions to the Laborers' Political League ("LPL") shall be deducted from the pay of each employee and forwarded to the Funds. Id. at 32. The Funds and the Union have an agreement which allows the Funds to collect the dues on behalf of the Union.

15. The CBA provides that all of the signatory employer's employees "shall become members of the Union after the eighth (8th) work day following the beginning of their

employment and shall thereafter during the term of Agreement, maintain such membership in good standing as a condition of continued employment." Id. at 7.

16. The CBA identifies the types of work for which contributions are due. Id. at pp. 37-50. This includes "Section 1. All work performed in connection with the Heavy & Highway Industries . . . [including] loading, unloading, carrying, or handling of all reinforcing steel and steel mesh; handling of lumber and other building materials; . . . loading, unloading, distribution, installation and tending of all types of temporary heating systems, handling, placing and removal of canvas, polyethylene and all other covering protective materials used for covering work, equipment and materials, etc.; [and] the traditional laborers work involved in the operation and maintenance of such tools of the trade." Id. at p. 38.

17. All employers that are delinquent in the payment of contributions are liable for interest on the delinquency at the rate of 10 percent per annum, liquidated damages in the amount of 20 percent of the delinquency, and reasonable attorneys' fees and costs to collect the delinquency. Id. at pp. 30-31.

18. Signatory contractors such as Highway are obligated to submit remittance reports to the Funds on a monthly basis, on which they list the hours worked by their covered employees in the previous month and calculate the amount of contributions due the Funds for all work performed by those employees in a given month. They are also required to submit to periodic audits of their payroll-related records.

19. As a signatory contractor, Highway has access to the "skilled and dependable labor" supplied by the Union. Id. at p. 8. It is also able to work for general contractors that are required by their own agreements with the Union to insure both that the terms and conditions of

those agreements, including the payment of contributions to the Plaintiff Funds, apply equally to any subcontracted work and that their subcontractors are signatory to the CBA. Id. at pp. 10, 37.

***Alter Ego and Single Employer Evidence***

20. On information and belief, Highway and Hi-Way have, and at all times relevant hereto had, the same corporate officers. According to Highway's Annual Report for 2016 filed with the Commonwealth of Massachusetts Secretary of State, attached hereto as Exhibit C, Kathy Coggeshall Delong is the President, Secretary, Treasurer and Director of Highway, and M. Kenneth Horn is also a Director. According to Hi-Way's Annual Report for 2016 filed with the Commonwealth of Massachusetts Secretary of State, attached hereto as Exhibit D, Kathy Coggeshall Delong is also the President, Secretary, Treasurer and Director of Hi-Way, and M. Kenneth Horn is also a Director.

21. On information and belief, Highway and Hi-Way are engaged in the same business and industry, and perform the same type of work. Highway's Annual report lists its business as "Contractor, Pavement Markings." Hi-Way's Annual report lists its business as "Pavement Markings Company." Both companies' work involves the painting and placement of pavement markings, road signs, and traffic control devices on public highways, streets and roadways.

22. On information and belief, at all times relevant hereto, Highway and Hi-Way have both operated out of the same location, 9 Rockview Way in Rockland, Massachusetts. Both companies list that address as their principal office address in their Annual Reports.

23. On information and belief, both companies use the same telephone number as their main telephone number, and share equipment, and tools, as well as administrative,

managerial and supervisory staff. See Affidavit of Joseph Paris ("Paris Aff."), attached hereto as Exhibit E, at ¶14.

24. The Companies pay their employees two different wage rates, referred to as "nonrate" hours and "rate" hours. Id. at ¶¶3, 6, 11. Employees are paid at "rate" for work performed on jobs to which the state prevailing wage law purportedly applies. Id. at ¶3. Employees are paid the considerable lower "nonrate" wage for work done in the company's shop, loading and unloading tools, equipment and materials into the company's vehicles) ("shop hours"). Id.

25. Upon information and belief, employees who are not Union members are paid with a single weekly check, from Hi-Way, for both their "rate" and "nonrate" hours, and no contributions are made on their behalf to the Funds. Id. at ¶11. For example, from his date of hire in or about July 2012 until he became a Union member in May 2014, former employee Joseph Paris ("Paris") received a single paycheck each week from Hi-Way. That check would include "rate" hours, ranging from $32 to $50+ per hour, and "nonrate" hours at $12 to $14 per hour. Id. at ¶3.

26. After Joseph Paris joined the Union in May 2014, he began receiving two separate paychecks each week: one from Hi-Way, and one from Highway. Id. at ¶5.

27. Each week, the check from Hi-Way would include only the "nonrate" hours at the lower wage rate, for "shop hours." The check from Highway would include only the "rate" hours. Id. at ¶6.

28. Mr. Paris' checks from Highway each listed a "Date of Hire" of May 19, 2014. Upon information and belief, this is the first week after he joined the Union. Id. at ¶7.

29. The companies only made contributions to the Plaintiffs Funds on Mr. Paris' behalf for the hours that they denoted as "rate" hours and that were paid on the check from Highway. No contributions were made to the Funds on his behalf for the "nonrate" hours paid on the Hi-Way check. Id. at ¶10.

30. Upon information and belief, the other employees of the companies who are or were members of the Union were paid in the same manner as Mr. Paris, and similarly had no contributions made on their behalf for "shop hours." Id. at ¶10.

31. The work performed by the non-Union employees, including "shop hours" as well as hours worked on jobsites, is work for which contributions are due to the Funds for each hour worked under the Agreement, without regard to whether the employee who performed the work is a member of the Union or not.

32. At all times relevant hereto, no contributions to the Plaintiff Funds have been made by either of the Companies for the "shop hours" work performed by their employees and paid from Hi-Way's payroll at the "non-union rate," and no Union dues were deducted from that pay.

33. The Union member employees and the non-Union member employees worked side-by-side on the same jobs, performing the same work. There was no distinction between the two groups in terms of work or projects assigned. Id. at ¶¶9, 12.

34. On repeated occasions, Joseph Paris complained to Companies managers about being paid with two separate checks and two different hourly rates. He was told to accept it or be fired. He was told this by, among others, Ken Horn and Cynthia ("Cindy") Duquette. Id. at ¶16.

35. Employees lost benefits as a result of the companies' failure to make contributions. For instance, as a result of not having contributions made to the Funds for all his hours worked, for a time Joseph Paris did not have enough reported hours to qualify for "Plan A" of the Mass. Laborers' Health and Welfare Fund. He had to switch to "Plan B," which required him to pay significantly more out-of-pocket expenses. Id. at ¶17.

36. The same tools, equipment and materials were used by both Union and non-Union employees. Id. at ¶15.

37. The same supervisors supervised both the Union and non-Union employees. No distinction between the two groups was made in terms of supervision. Id. at ¶13.

38. A single group of staff people perform administrative and accounting tasks for the companies. Id.

39. The companies also both use the same telephone number as their main telephone number. Id.

40. The companies' vehicles say only "Highway Safety" on them. No distinction is made on the vehicles between Highway Safety Solutions, Inc. and Hi-Way Safety Systems, Inc. Id. at ¶14.

## COUNT I - VIOLATION OF ERISA

41. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 40 above.

42. Hi-Way is and has been the alter ego of Highway since at least June 20, 2003.

43. Highway and Hi-Way form and have formed a single employer with a single appropriate bargaining unit since at least June 20, 2003.

44. By failing to make contributions to the Funds for covered work performed by employees paid by Hi-Way, Highway and Hi-Way are jointly and severally liable for all contributions owed on behalf of all employees of either or both companies who performed work covered by Highway's CBA and their failure to make those contributions violates §515 of ERISA, 29 U.S.C. §1145. Highway and Hi-Way are also jointly and severally liable for interest, liquidated damages, and attorneys' fees and costs as mandated by ERISA, 29 U.S.C. §1132(g).

45. A copy of this Complaint is being served upon the Secretary of Labor and the Secretary of the Treasury by certified mail as required by §502(h) of ERISA, 29 U.S.C. §1132(h).

**COUNT II - VIOLATION OF COLLECTIVE BARGAINING AGREEMENT - DELINQUENT CONTRIBUTIONS, INTEREST, AND DUES**

46. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 45 above.

47. The CBA is a contract within the meaning of §301 of the LMRA, 29 U.S.C. §185.

48. The failure of Highway and Hi-Way to pay the contributions due for work performed by employees paid by Hi-Way at all times relevant hereto, to remit Union dues, and to submit remittance reports violates the terms of the CBA.

**WHEREFORE**, Plaintiffs request this Court grant the following relief:

a. Order the attachment of the machinery, inventory and accounts receivable of Highway and Hi-Way;

b. Order Highway and Hi-Way to make available to the Plaintiff Funds or their duly authorized representative all of their payroll records, including, but not limited to, file copies of contribution reports, payroll tax returns, employees' earning records and hours worked, weekly payroll registers, certified payrolls, cash disbursement journals and a complete listing of all job

locations through the date of the Court's order for the purpose of ascertaining the amounts, if any, of unpaid contributions owed for that period;

c. Enter a preliminary and permanent injunction enjoining Highway and Hi-Way from refusing or failing to permit the Plaintiff Funds to audit the payroll records as prayed for in the preceding paragraph;

d. Enter a preliminary and permanent injunction enjoining Highway and Hi-Way from refusing or failing to pay contributions and interest owed to the Funds for any and all covered work performed by employees of Highway and Hi-Way;

e. Enter judgment in favor of the Funds and against Defendants Highway and Hi-Way on Count I in the amount of all contributions due for work performed by employees of Hi-Way, plus any additional amounts determined by the Court to be owed to the Funds by Highway and/or "Hi-Way," or which may become due during the pendency of this action, together with interest on the unpaid contributions at 10 percent per annum, liquidated damages in an amount equal to 20 percent of the total of unpaid contributions or the total interest owed, whichever is greater, reasonable attorneys' fees, and costs, all pursuant to 29 U.S.C. §1132(g)(2);

f. Enter judgment in favor of the Funds and against Defendants Highway and Hi-Way on Count II for the amount of any unpaid contributions and dues, plus any additional amounts determined by the Court to be owed to the Funds or which may become due during the pendency of this action; and

g. Such further and other relief as this Court may deem appropriate.

Respectfully submitted,

LOUIS MANDARINI III, as he is
EXECUTIVE DIRECTOR,
MASSACHUSETTS LABORERS'
HEALTH AND WELFARE FUND, *et al.*,

By their attorneys,

/s/ Anne R. Sills
Anne R. Sills, Esquire
BBO #546576
Alexander Sugerman-Brozan, Esquire
BBO #650980
Segal Roitman, LLP
111 Devonshire Street, 5th Floor
Boston, MA 02109
(617) 742-0208, Ext. 232
asills@segalroitman.com

Dated: August 14, 2017

## VERIFICATION

I, Donna Carr, Assistant Executive Director for the Massachusetts Laborers' Health and Welfare, Pension, and Annuity Funds, verify that I have read the above Verified Complaint, and the factual allegations set forth therein are true and accurate based on my personal knowledge, except for those allegations based on information and belief, and, as to those allegations, I believe them to be true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 14th DAY OF AUGUST, 2017.

Donna Carr

ASB/asb,ars&ts
6306 17-092/complt.doc