**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LOUIS MANDARINI III, et al.,<br>    Plaintiffs,<br><br>v.<br><br>HIGHWAY SAFETY SOLUTIONS, INC., et al.,<br>    Defendants. | C.A. No. 1:17-CV-11506-NMG<br><br>**DEFENDANT, HIGHWAY SAFETY SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

Defendant Highway Safety Solutions, Inc. ("Solutions") hereby opposes Plaintiffs' Motion to Compel Production of Documents (the "Motion to Compel").[1] Plaintiffs' Motion to Compel grossly misstates the course and status of discovery in this case, which has been marked by nearly incessant harassment by Plaintiffs' counsel of Solutions' undersigned counsel while she was on short-term disability leave and Family Medical Leave Act ("FMLA") leave in connection with the birth of a child. Such tactics and behavior – especially from a plaintiff-side law firm that fights to enforce the FMLA – have been shocking.[2]

The Motion to Compel further underscores Plaintiffs' irrational behavior with respect to discovery because, as set forth below, the majority of the documents requested either do not exist

---

[1] Defendant, Hi-Way Safety Systems, Inc. will submit a separate Opposition.

[2] Plaintiffs have repeatedly argued (and even argue in their Motion to Compel) that another attorney should represent Solutions because undersigned counsel had a baby and then represented a party at a trial in this Court. Such argument – which has been heavily criticized by members of the bar across the country – smacks of pregnancy discrimination. See e.g., Biglaw Partner Accuses Small-Firm Litigator of Using Pregnancy to Delay Trial, Above the Law (Jul. 25, 2018), https://abovethelaw.com/2018/07/biglaw-partner-accuses-small-firm-litigator-of-getting-pregnant-to-delay-trial/ ("As we've noted time and again, basic human courtesy gets tossed to the wind when women lawyers become pregnant . . . it is an embarrassment to the legal profession that women continue to be treated this way.").

Moreover, Plaintiffs' argument rests on the outlandish proposition that one party can chose counsel for its opponent, an argument which has substantial ethical problems and should not be endorsed by the Court.

While the Plaintiffs may have the resources to staff each of their multitude of cases currently pending in this Court with at least three attorneys, Solutions does not have such deep pockets and cannot be forced to bear the cost of avoidable problems caused by *Plaintiffs*' substantial delays in raising discovery issues, as described herein.

(as Solutions has repeatedly informed Plaintiffs) and/or have already been produced. Moreover, Solutions should be protected from producing the remaining categories of documents sought, as the overbroad and unduly burdensome requests seek hundreds of thousands (if not millions) pages of irrelevant documents and the sheer manpower and financial costs that would be required to produce such volumes of documents would impose a hardship on Solutions and cause operations at the small company to screech to a halt.

I. **History of Discovery.**

    A. **Solutions' Productions.**

Solutions responded to Plaintiffs' Requests for Production of Documents and served its Answers to Interrogatories on February 23, 2018. See Solutions' Response to Plaintiffs' Request for Production of Documents, attached hereto as **Exhibit A**; Solutions' Answers to Interrogatories, attached hereto as **Exhibit B**. Accordingly, Plaintiff has been on notice of Solutions' objections to several categories of the requested documents since February 23, 2018.

On February 23, 2018, Solutions made an initial production of documents but noted that additional documents would not be produced until the entry of a mutually acceptable Confidentiality Stipulation and Order. Such Confidentiality Stipulation and Order was entered by this Court on April 9, 2018. Thereafter, Solutions made two additional document productions and produced 1,134 pages of documents.[3]

    B. **Counsel's Disability and FMLA Leave.**

Since February 2018, undersigned counsel has been transparent with Plaintiffs' counsel that she was expecting a child in May 2018 and would be taking maternity leave. See Email

---

[3] Notably, Plaintiffs were quite late in responding to the Request for Production of Documents and Interrogatories propounded by Defendants in January 2018, and they failed to request extensions of the deadlines to respond to the same. Plaintiffs failed to serve the Response to the Request for Production of Documents until May 2018 and failed to Answer the Interrogatories until June 2018. Plaintiffs' substantial and unexplained delays precluded Solutions' counsel from conducting further discovery (including depositions) before her maternity leave.

2

from A. Baer, dated April 19, 2018 (recounting the several communications by counsel regarding her upcoming FMLA leave), attached hereto as **Exhibit C**. Undersigned counsel reasonably believed that Plaintiffs' counsel understood the situation, as the parties had filed a Motion to Extend which was based, in part, on the anticipated FMLA leave.

As mentioned above, Solutions served its Response to the Request for Production of Documents in February 2018. On May 16, 2018, undersigned counsel gave birth and began her FMLA leave. Accordingly, Plaintiffs' had approximately *three months* from the date Solutions' discovery responses were served until the beginning of counsel's leave to raise discovery issues. Plaintiffs failed to do so. In fact, undersigned counsel repeatedly attempted to move discovery forward and schedule depositions to occur before her leave began, but Plaintiffs refused. See Ex. C, Email from A. Baer (recounting her several attempts to schedule depositions and Plaintiffs' stonewalling of the same). Stated simply, Plaintiffs' manufactured crisis regarding discovery was caused by their failure to plan and manage the case.

Rather than respect counsel's FMLA leave – which was scheduled to run from May 16, 2018 through September 3, 2018 – Plaintiffs' counsel began an incessant campaign of – frankly – harassment by repeatedly threatening to file motions to compel if thousands of pages of documents were not produced by counsel during her leave, demanding responses to emails within hours, and demanding that undersigned counsel hand over the case to a different attorney.

Client Matter/27332/00003/A5730450.DOCX

By way of sampling only (since Plaintiffs' counsel emailed undersigned counsel approximately 30 separate times while she was on FMLA leave)[4], undersigned counsel refers to the following emails:

- Email from S. Gillin, dated June 4, 2018 ("We need the documents as soon as possible . . . we would like to avoid moving to compel . . . I hope you and your baby are doing well.");[5]

- Email from N. Goldstein, dated June 16, 2018 ("In terms of getting the documents, please let us know your timeline soon. We would like to avoid motion practice . . .");

- Email from S. Gillin, dated July 12, 2018 ("I hope this finds you and your baby doing well . . . we really need to move on the document issue before then . . . [w]e will have to move to compel if we don't have them by August.");

- Email from N. Goldstein, dated July 16, 2018 ("Please provide us a supplemental production by August 1. If we do not have it by then, we will have to consider seeking redress with the Court.");

- Email from S. Gillin, dated July 17, 2018 ("[w]e understand you are on leave . . . someone else at your firm could certainly cover responding to a standard document request before then.");

- Email from S. Gillin, dated July 21, 2018 ("You have not offered any reason why someone else at your firm cannot step in to respond . . . we will be moving to compel if we don't have the requested document in the near future.");

- Email from N. Goldstein, dated August 3, 2018 ("[P]lease let us know where you guys are at on this . . . need to make a decision by next Wednesday.");

- Second Email from N. Goldstein, dated August 3, 2018 ("We don't see any reason why such documents cannot be collected and produced in your absence . . . we would like to file [a motion to compel] next week if we can't come to some resolution."); and

- Email from S. Gillin, dated August 4, 2018 ("We need a proposal from you by the end of the day today . . . we will have to file our motion to compel tomorrow.").

---

[4] Tellingly, Plaintiffs' counsel have only emailed Solutions' counsel *three times* since her leave ended two months ago. This pales in comparison to the nearly 30 emails sent during the three-month period when she was on leave. In light of the behavior of Plaintiffs' counsel with respect to undersigned counsel's maternity leave, the reason for this juxtaposition is obvious.

[5] Despite the fact that Solutions had served its Response to the Request for Production of Documents in February 2018, this June 4, 2016 email was Plaintiffs' first time raising specific issues with Solutions' Responses.

Client Matter/27332/00003/A5730450.DOCX

Plaintiffs would have this Court believe that undersigned counsel has been obstructionist and unresponsive. To the contrary, even though she was on disability and medical leave, recovering from childbirth and/or attending to a newborn baby,[6] undersigned counsel participated in a teleconference scheduled by this Court regarding mediation, responded to Plaintiffs' counsel's incessant emails, and engaged in several conference calls with Plaintiffs' counsel and her client. Accordingly, Plaintiffs' attempts to drag undersigned counsel through the mud should be rejected.

## II. Standard of Review.

As this Court is well-aware, Rule 26(b) of the Federal Rules of Civil Procedure permits the discovery of any non-privileged material that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (emphasis added). Rule 26(b) makes "proportionality . . . an express component of the scope of discovery" thereby preventing the use of discovery "for delay or oppression." FED.R.CIV.P. 26 (Advisory Committee's note to the 2015 amendments). Stated differently, relevancy alone is not sufficient to obtain discovery in federal courts; instead, the requested discovery must also be proportional to the needs of the case.

## III. Specific Categories of Requests.

Turning to the specific documents that are the subject of the Motion to Compel with respect to Solutions, Solutions submits that the majority of the Motion to Compel is moot

---

[6] Upon returning from leave, undersigned counsel represented Defendant at trial in the matter Zeigler v. Atrius Health, Inc., Docket No. 1:15-cv-13384-IT. The trial ran continuously in this Court before the Honorable Judge Indira Talwani from October 1 through October 24, 2018.

5

Client Matter/27332/00003/A5730450.DOCX

because (a) the requested documents have been produced; and/or (b) the requested documents do not exist and/or were destroyed by a flood in 2015. With respect to the remaining categories of documents requested, the requests are incredibly overbroad and Plaintiffs have eschewed Solutions' attempts to narrow the requests to a more reasonable scope. Specifically, Solutions responds to the requested documents as set forth in Plaintiffs' Motion to Compel as follows:

### A. Tax Returns.

Plaintiffs seek the production of Solutions' tax returns for years 2011 and 2017. Plaintiffs' request should be denied because: (1) Solutions' tax returns for 2017 have been produced; and (2) as Solutions has *repeatedly* informed Plaintiff, it cannot produce the 2011 tax returns because they were destroyed in a flood.[7]

### B. Payroll Registers.

Plaintiffs seek the production of Solutions' payroll registers for 2011, 2012, 2016 and 2017. Once again, Plaintiffs' request should be denied because: (1) Solutions' payroll registers for 2016 and 2017 have been produced; and (2) as Solutions has *repeatedly* informed Plaintiffs, the payroll registers for 2011 and 2012 were destroyed in a flood.[8]

### C. W-2s.

Plaintiffs seek the production of Solutions' W-2s for years 2011, 2012, and 2017. Plaintiffs' request should be denied because: (1) Solutions' W-2s for 2017 have been produced; and (2) as Solutions has *repeatedly* informed Plaintiffs, the W-2s for years 2011 and 2012 were destroyed in a flood.[9]

---

[7] See Ex. B, Solutions' Answers to Interrogatories, No. 21 ("Solutions' business records were destroyed in a flood in March 2015"); Email from A. Baer to S. Gillin, dated September 17, 2018, attached hereto as **Exhibit D**, ("The tax return for 2011 was destroyed in a flood.").
[8] Ex. D, Email from A. Baer to S. Gillin ("The payroll registers for 2011 and 2012 were destroyed in a flood.").
[9] Ex. D, Email from A. Baer to S. Gillin ("The W-2s for 2011 and 2012 were destroyed in a flood.").

Client Matter/27332/00003/A5730450.DOCX

### D. Time Sheets.

Plaintiffs seek the production of the timesheets of Solutions' employees for years 2011, 2012, 2013, and 2017. Plaintiff's request should be denied because: (1) the timesheets for 2017 have been produced; and (2) as Solutions has ***repeatedly*** informed Plaintiffs, the timesheets for years 2011, 2012, and 2013 were destroyed in a flood.

### E. Contracts.

Since February 23, 2018 – when it served the Response to Request for Production of Documents – Solutions has objected to Plaintiffs' unduly burdensome and overbroad request for *seven years worth* of "all documents setting forth agreements, contracts, purchase orders, invoices, change orders, or other writings between [Solutions] and any general contractors or subcontractors for whom [Solutions] has worked and/or subcontractors who have worked for [Solutions]." See Ex. A, Solutions' Response to Request for Production of Documents, No. 12. As articulated by Solutions in its Exhibit A to the Answers to Interrogatories, it has worked on 111 jobs in the three years between 2013 and 2016 alone.[10]

Plaintiffs' request is absurdly overbroad and effectively seeks the production of each and every document relating to every single job performed by Solutions over the course of seven years. The production of such documents would be staggering and cause operations at Systems – a small company with very limited support staff – to screech to a halt. Not only is the request overbroad, Plaintiffs have also completely failed to articulate how these potentially millions of pages of requested documents would be relevant to this matter.

---

[10] Exhibit A to Solutions' Answers to Interrogatories is marked "Confidential" pursuant to the parties' Confidentiality Agreement because it contains Solutions' confidential business information and, therefore, is not attached as an exhibit hereto. Exhibit A was produced to Plaintiffs on May 11, 2018.

7

For months, Solutions has endeavored in good faith to work with Plaintiffs to narrow the request.[11] Specifically, Solutions repeatedly asked Plaintiffs to identify a limited number of specific jobs for which Solutions will then produce contracts. Plaintiffs have eschewed this reasonable request to narrow the scope of the request.

For these reasons, Plaintiffs' oppressive request to compel Solutions to effectively halt operations in order to produce potentially millions of pages of irrelevant documents should be denied, as the request is certainly not proportional to the needs of the case.

### F. Invoices.

The Motion to Compel is the *first* time that Plaintiffs have sought to compel the production of "invoices between Solutions and Systems." See Motion to Compel, 2. The broad, ambiguous request for "invoices" is an apparent reference to Request No. 12 of Plaintiffs' Requests for Production of Documents, to which Solutions objected to *eight months ago*, on February 23, 2018. See Ex. A, Solutions' Response to Request for Production of Documents, No. 12.

Not only is the request overbroad and seeks irrelevant documents, but – as articulated by Solutions in its Answers to Interrogatories – Solutions "does not sell, rent, lease, contract, or subcontract office space, office equipment, construction equipment, tools, vehicles, office or administrative services, consulting services, or supervisory services, or 'work covered by the Agreement' to Systems." See Ex. B, Solutions' Answers to Interrogatories, No. 15. Simply put, no invoices exist and, therefore, Plaintiffs' request should be denied.

---

[11] Ex. D, Email from A. Baer to S. Gillin ("As indicated in the Response to Request No. 5, this request for all contract and bid documents is incredibly overbroad and unduly burdensome and seeks documents that are not relevant to any claim or defense or proportional to the needs of the case. If Plaintiffs have proposals to narrow this request, I am happy to discuss.")

Client Matter/27332/00003/A5730450.DOCX

### G. Cash Disbursement Journals.

Once again, the Motion to Compel is the *first* time that Plaintiffs have sought to compel the production of Solutions' bank statements and check registers for a six-year period. This is an apparent reference to Request No. 5, which broadly seeks all of Solutions' "banking records." Solutions objected to Request No. 5 as being "vague, overbroad, unduly burdensome" and seeking "documents that are not relevant to any party's claim or defense or proportional to the needs of the case." See Ex. A, Solutions' Response to the Request for Production of Documents, No. 5. This objection was raised in February 2018 and, since then, Plaintiffs have not attempted to address the objection with respect to "banking records" or check registers. With respect to "cash disbursement journals," Solutions explained that such records do not exist and, therefore, cannot be produced.

Presumably – in this ERISA action – Plaintiffs are attempting to discover whether Solutions issued any non-payroll checks to its employees (notably, this is speculation only, as Plaintiffs failed to explain why such records are relevant or necessary in their Motion to Compel). However, this avenue of discovery was addressed with Plaintiffs' Request No. 26, which seeks "any documents concerning any payment to any Laborer Employee in cash or through a non-payroll check." Solutions unequivocally responded that "it has no responsive, non-privileged documents within its possession, custody, or control." See Ex. A, Solutions' Response to the Request for Production of Documents No. 26. Stated differently, Solutions did not pay any of its Laborer Employees in cash or through non-payroll check. Accordingly, a deep dive into seven years of Solutions' banking records is unwarranted and over intrusive and Plaintiffs have provided no argument to the contrary. Therefore, Plaintiffs' request should be denied.

9

Client Matter/27332/00003/A5730450.DOCX

### H. Correspondence.

Finally, Plaintiffs make the vague and unlimited request for "correspondence between Solutions and Systems." Solutions objected to this request in February 2018 when it stated that the Request "is overbroad, unduly burdensome, unlimited in scope, seeks documents that are not relevant to any party's claim or defense or proportional to the needs of the case, and seeks documents protected by the attorney-client and/or work product privileges." See Ex. A, Solutions' Response to the Request for Production of Documents, No. 15. Thereafter, Solutions endeavored in good faith to narrow the request, which Plaintiffs have ignored.[12] Plaintiffs have not even attempted to address Solutions' well-founded objections or narrow their request and, therefore, the Motion to Compel should be denied.

## CONCLUSION

WHEREFORE, for the reasons stated above, Defendant, Highway Safety Solutions, Inc. requests that Plaintiffs' Motion to Compel be denied in its entirety.

---

[12] Ex. D, Email from A. Baer to S. Gillin ("As indicated in the Response to Request No. 15 of the RPD, this request is overbroad, unduly burdensome, unlimited in scope, seeks documents that are not relevant to any party's claim or defense or proportional to the needs of the case, and potentially seeks documents protected by the attorney-client and/or work product privileges. If Plaintiffs have proposals to narrow this request, I am happy to discuss.")

Client Matter/27332/00003/A5730450.DOCX

Defendant,

**Highway Safety Solutions, Inc.,**

By its attorney,

 */s/ Amanda Mare Baer*_____
Amanda Marie Baer, BBO #681386
MIRICK O'CONNELL
1800 West Park Drive, Suite 400
Westborough, MA 01581
t 508.860.1472
f 508.983.6230
abaer@mirickoconnell.com

Dated: November 2, 2018

11

Client Matter/27332/00003/A5730450.DOCX

**CERTIFICATE OF SERVICE**

      I, Amanda Marie Baer, hereby certify that on this date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electric filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

| | |
|---|---|
| | */s/ Amanda Marie Baer* |
| Dated:  November 2, 2018 | Amanda Marie Baer, Esq. |